**In re OMNI MUTUAL, INC., Debtor.**

**No. 95 Civ. 3198(SHS).**

United States District Court,
S.D. New York.

March 19, 1996.

John J. Landi, pro se.

Nancy I. Ruskin, Orrick, Herrington & Sutcliffe, New York City, for Sam Scott Miller, Trustee.

Stephen P. Harbeck, General Counsel, Kenneth J. Caputo, Assistant General Counsel, Securities Investor Protection Corporation, Washington, DC.

## OPINION AND ORDER

STEIN, District Judge.

Appellants Sam Scott Miller, trustee for the liquidation of debtor Omni Mutual, Inc., and the Securities Investor Protection Corporation ("SIPC") appeal from an interlocutory order of the United States Bankruptcy Court for the Southern District of New York. That order denied the trustee's motion seeking summary judgment confirming the trustee's denial of appellee John J. Landi's $5,000 claim. By order dated March 6, 1995, this Court (Sprizzo, J.) granted appellants' motion for leave to file an interlocutory appeal. The sole issue on this appeal is whether the bankruptcy court erred as a matter of law in determining that the question of whether or not Landi was a "customer" of a broker-dealer in liquidation and thus entitled to compensation for his $5,000 loss pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. 78aaa *et seq.*, was a genuine issue of material fact precluding summary judgment. For the reasons that follow, the Court concludes that Landi was not a "customer" for purposes of SIPA and therefore the order of the bankruptcy court must be reversed.

## I. BACKGROUND

In March of 1988, Landi purchased a one-half interest in a limited partnership known as the Omni Mutual Insurance Group ("OMIG") by sending $5,000 to Omni Mutual Inc. ("Omni"). Omni provided Landi brochures stating that it was a member of SIPC and a letter stating that OMIG "will be registered" with the Securities and Exchange Commission ("SEC") once a "list of limited partners is finalized." (Letter to Landi from Omni dated March 2, 1988.) The limited partnership, however, was never registered with the SEC.

A liquidation proceeding was commenced against Omni pursuant to SIPA in May of 1988, and Miller was appointed trustee for the liquidation. Shortly thereafter, Landi submitted a claim seeking $5,000.76, which the trustee denied by a notice of determination dated December 30, 1988. Landi filed an objection with the bankruptcy court. The trustee moved for summary judgment claiming that Landi was not a "customer" as defined by SIPA.

The bankruptcy court had previously found that no registration statement for the limited partnership had been filed with the SEC and denied several other claims based on OMIG because the limited partnership interests were not "securities" pursuant to SIPA. Because the interests were not securities, the bankruptcy court concluded that the claimants' could not be "customers" who would be entitled to compensation according to the SIPA statutory framework. (Tr. dated June 19, 1992, p. 16.) The bankruptcy court, however, reached a different conclusion when it addressed Landi's claim. Specifically, it found that a material issue of fact remained in dispute based on the representations made to Landi that the limited partnerships were going to be registered with the SEC. Although those representations would not make the interest protectible as a security, the bankruptcy court concluded that Landi may have a claim for cash held by a broker-dealer to purchase securities. (Tr. Dated Nov. 30, 1994 at pp. 16–20.) Thus, the trustee's motion for summary judgment was denied and this appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a bankruptcy court's denial of summary judgment de novo and thus applies the same legal standards as the bankruptcy court. See In re LCO Enters., 12 F.3d 938, 941 (9th Cir.1993); American Lumber Corp. v. National R.R. Passenger Corp., 886 F.2d 50, 52 (3d Cir.1989). Pursuant to Fed.R.Bankr.P. 7056, summary judgment in bankruptcy proceedings is governed by Fed.R.Civ.P. 56(c) and shall be granted only when there is "no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Consarc Corp. v. Marine Midland Bank N.A., 996 F.2d 568, 572 (2d Cir.1993). Furthermore, the determination of whether a claimant is entitled to SIPA protection is a question of law subject to de novo review. See In re Stalvey & Assocs. Inc., 750 F.2d 464, 468 (5th Cir.1985); Securities and Exch. Comm'n v. Albert & Maguire Sec. Co., Inc., 560 F.2d 569, 571 (3d Cir.1977).

## III. DISCUSSION

SIPA was passed by Congress in 1970 in order "to protect the public customers of securities dealers from suffering the consequences of financial instability in the brokerage industry," Securities and Exch. Comm'n v. F.O. Baroff Co., Inc., 497 F.2d 280, 281 (2d Cir.1974) (citations omitted), by "providing financial relief to the customers of failing broker-dealers with whom they had left cash or securities on deposit," Securities Investor Protection Corp. v. Barbour, 421 U.S. 412, 413, 95 S.Ct. 1733, 1735, 44 L.Ed.2d 263 (1975). See also In re Brentwood Sec., Inc., 925 F.2d 325, 326–27 (9th Cir.1991); Stalvey & Assocs., 750 F.2d at 468. SIPA created SIPC and SIPC maintains an insurance fund not unlike the Federal Deposit Insurance Corporation. See Brentwood Sec., 925 F.2d at 327; In re Oberweis Sec., Inc., 135 B.R. 842, 845 (Bankr.N.D.Ill.1991). SIPA was not, however, "designed to provide full protection to all victims of a brokerage collapse," and recovery is limited to a certain class of investors who are "customers" within the terms of SIPA. Securities and Exch. Comm'n v. Packer, Wilbur & Co., Inc., 498 F.2d 978, 983 (2d Cir.1974); F.O. Baroff Co., 497 F.2d at 281.

In addition, the courts in this Circuit have held that "customer" is a term of art and its definition should be construed narrowly. In re MV Sec., Inc., 48 B.R. 156, 160 (Bankr.S.D.N.Y.1985) (citing Securities Investor Protection Corp. v. Morgan, Kennedy & Co., 533 F.2d 1314 (2d Cir.), cert. denied, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1987); F.O. Baroff Co., 497 F.2d at 280). SIPA does not use "customer" in the "colloquial sense of 'one who buys or trades'"; instead, it is a "shorthand designation for

those eligible ... to receive special protection for their investments." *Stalvey & Assocs.*, 750 F.2d at 468. SIPA defines a customer as:

> any person ... who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to a sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities ...

15 U.S.C. § 78*lll*(2). The United States Court of Appeals for the Ninth Circuit recently summarized the requirements of this definition as follows: "An investor is entitled to compensation from the SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore is not entitled to recover from the SIPC trust fund." *Brentwood Sec.*, 925 F.2d at 327.

█ The bankruptcy court found that the OMIG limited partnership interests were not "securities" under SIPA on the grounds that a limited partnership qualifies as a security pursuant to SIPA only if it is registered with the SEC. (Tr. dated Nov. 30, 1994, pp. 5–6); *see also Brentwood Sec.*, 925 F.2d at 329. Here, there was no registration and hence no security. Neither party challenges that determination. The bankruptcy court, however, concluded that Landi might have a claim for cash deposited with a broker because he gave his broker $5,000 to purchase an investment that might qualify as a "security" if it were registered at some future date. Accordingly, the bankruptcy court denied the trustee's motion for summary judgment.

In reaching its conclusion, the bankruptcy court relied on an unpublished per curiam opinion of the United States Court of Appeals for the Sixth Circuit, *In re First Ohio Sec. Co.*, 39 F.3d 1181 (6th Cir.1994) (Table) (text in Westlaw at 1994 WL 599433). Pursuant to Rule 24(c) of the Sixth Circuit,

however, the mere citation of an unpublished disposition is "disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case." None of those exceptions apply in this case. Moreover, even if the Sixth Circuit's unpublished opinion were permitted to be relied upon, the rationale of *First Ohio Sec. Co.* is inapplicable to Landi's situation. In that case, the investors paid money to their broker-dealer to purchase securities and the money was never used to purchase the securities. Thus, the Sixth Circuit concluded that the investment was still cash held by the broker-dealer for the purchase of securities.

Here, however, Landi paid $5,000 to purchase a limited partnership interest and, while he did not receive the protection he now claims he believed he was entitled to, he received an interest in a limited partnership, which is not "cash." A claim based on "cash" under SIPA has two elements: (1) the cash must be on deposit with a broker-dealer; and (2) it must have been paid for the purpose of purchasing securities. *See* 15 U.S.C. § 78*lll*(2). The bankruptcy court focused primarily on the second element, finding that Landi may have paid his $5,000 intending to purchase a "security." However, even if an intention to purchase an investment that may become a security were sufficient to satisfy this second element, Landi's claim fails the more fundamental requirement that it be cash on deposit with the broker-dealer. *See F.O. Baroff Co.*, 497 F.2d at 284. Once Landi received the OMIG limited partnership interest, his $5,000 was no longer cash on deposit with Omni; instead, it had been converted into the limited partnership interest. *See Brentwood Sec.*, 925 F.2d at 329.

As noted above, SIPA is not designed to insure against all consumer losses relating to an insolvent broker-dealer. *See MV Sec.*, 48 B.R. at 160 (quoting *Securities and Exch. Comm'n v. Howard Lawrence & Co., Inc.*, 1 B.C.D. 577, 579 (Bankr.S.D.N.Y.1975)). Furthermore, this is not a case of a trusting customer being "penalized for choosing a careless, unethical or dishonest broker." *Securities Exch. Comm'n v. Ambassador Church Fin./Dev. Group, Inc.*, 679 F.2d 608, 614 (6th Cir.1982); *Schultz v. Omni Mutual*

*Inc.,* No. 93 Civ. 3700, 1993 WL 546671, at *4 (S.D.N.Y. Dec. 30, 1993). The letter sent to Landi from Omni dated March 2, 1988 clearly states that OMIG "will be registered" in the future and thus informed Landi that OMIG was not registered at the time of purchase. (Letter to Landi from Omni dated March 2, 1988.)

■ Furthermore, Landi's subjective belief that the interests would be protected by SIPA, regardless of how reasonable that belief may have been, is not sufficient to find that Omni held his cash or that he had purchased a "security" as those terms are defined by SIPA. *See Brentwood Sec.,* 925 F.2d at 329. Under SIPA, "[a]rguments based solely on the equities are not, standing alone, persuasive." *Packer, Wilbur,* 498 F.2d at 983; *see also Morgan, Kennedy & Co.,* 533 F.2d at 1316 n. 4; *Stalvey & Assocs.,* 750 F.2d at 473. Landi has failed to meet the definition of a "customer" and that alone is sufficient to preclude his recovery under SIPA. *See Brentwood Sec.,* 925 F.2d at 329.

In sum, it is uncontested that the OMIG interests were not registered with the SEC as required to qualify as a "security" pursuant to SIPA. Because Landi had neither entrusted "cash" nor purchased a "security" at the time of the loss, he is not a "customer" and cannot recover pursuant to SIPA. *See Brentwood Sec.,* 925 F.2d at 327. Accordingly, the bankruptcy court erred as a matter of law by failing to enter judgment in favor of appellants.

## IV. *CONCLUSION*

For the reasons set forth above, the order of the bankruptcy court is reversed.

SO ORDERED.