986 F.2d 682
 Charles E. MOORE, # AM-2804
v.
Hermann TARTLER, Board Secretary, Commonwealth of
Pennsylvania, Pennsylvania Board of Probation and Parole;
John P. Showronski, Director, Division of Hearing Review;
Chapel, Parole Agent; Dougherty, Parole Agent; Marshall,
Parole Agent at Sci-Graterford; Donald T. Vaughn,
Superintendent, at Sci-Graterford; E.C. Burke, Culinary
Manager, at Sci-Graterford; Gandy, Doctor, at Sci-Graterford
Charles Moore, Appellant.
 No. 92-1476.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 5, 1993.
Decided March 1, 1993.
 
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civ. No. 91-00423).
 Angus R. Love (Argued), Pennsylvania Institutional Law Project, Philadelphia, PA, for appellant.
 Ernest D. Preate, Jr., Atty. Gen., Denise A. Kuhn (argued), Deputy Atty. Gen., Kate L. Mershimer, John G. Knorr, III, Office of Atty. Gen., of Pennsylvania, Philadelphia, PA, for appellees.
 Before: MANSMANN and NYGAARD, Circuit Judges, and RODRIGUEZ, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 We are asked to decide whether a six month delay in an inmate's release from incarceration violates his eighth amendment right to be free from cruel and unusual punishment. Because we find that the delay did not result from deliberate indifference to the inmate's liberty interest by parole board officials, the eighth amendment was not violated. We, therefore, will affirm the judgment of the district court granting summary judgment in favor of the parole board officials.
 
 I.
 
 2
 On August 25, 1978, Charles E. Moore was sentenced to serve a term of imprisonment of 6 to 12 years in Pennsylvania state prison for a drug conviction. He began serving time on December 17, 1979, at the State Correctional Institute at Graterford. His minimum date for release was December 13, 1985 and his maximum date for release was December 15, 1991. Moore was paroled on his minimum date in 1985.
 
 
 3
 On May 4, 1989, while on parole, Moore was arrested and charged with burglary and related offenses. Upon arrest, Moore was confined to the Philadelphia County Jail. On May 5, 1989, the Pennsylvania Board of Probation and Parole lodged a detainer against Moore for violating parole on the drug conviction. On June 29, 1989, the Philadelphia Court of Common Pleas reduced Moore's bail on the burglary charge to Release on Own Recognizance and ordered Moore transferred to a state prison pursuant to the parole board's detainer.[1] On September 19, 1989, Moore was transferred to the State Correctional Institution at Graterford.
 
 
 4
 On June 27, 1990, Moore was convicted on the burglary charges in the Court of Common Pleas of Philadelphia County and was sentenced to "time in to 23 months" in Philadelphia County Prison.[2]
 
 
 5
 On September 20, 1990, Moore had a hearing before the parole board examiner at Graterford. On October 23, 1990, the parole board ordered that Moore be "recommit[ed] as a C.P.V. (convicted parole violator) to a State Correctional Institution when available to serve six months back time."
 
 
 6
 On November 5, 1990, Moore appealed this decision by filing a Request for Administrative Relief to Parole Board Secretary Hermann Tartler. On November 21, 1990 and December 31, 1990, Moore filed two additional requests that he be released immediately.[3] In all of these filings Moore contended that he had been available to serve his backtime since June 29, 1989, when he was released from the authority of the court on the burglary charge. Moore asserted that he had already spent 17 months at Graterford on a detainer and that he should be released immediately under Gaito v. Pennsylvania Board of Probation & Parole, 488 Pa. 397, 412 A.2d 568 (1980) (incarceration due solely to a detainer lodged by the parole board, where the detainer has otherwise met the requirements for bail on the new criminal charges, shall be credited to the detainee's original sentence). Moore's contention was that the time spent between the date his bail was reduced and the date of his sentencing should be credited towards the six months backtime added by the parole board on October 23, 1990 to his original sentence.
 
 
 7
 On January 7, 1991, William Traister, Director of Pre-Parole Analysis and Records Management, denied Moore's request for release. Traister informed Moore that the parole board interpreted the county judge's order to mean that Moore was still serving time on the burglary charge and was not yet available to begin the six months backtime. He stated, "Since your sentencing order does not include parole, you are not considered available to the Board for service of backtime until the order is issued or you have served your entire maximum sentence."
 
 
 8
 The gravamen of Moore's request for immediate release was that the judge sentencing him on the burglary charges clearly intended by the words "time in" that Moore not serve any additional time in incarceration. Moore argued that the parole board erred when it concluded that he was not "available" to serve time under his original sentence as of October 23, 1990, and that the parole board erroneously interpreted the sentencing judge's order.
 
 
 9
 Meanwhile, prior to the parole board's denial of Moore's appeal, on October 16, 1990, Syed Ali, a Probation and Parole Staff Specialist from the central parole office in Harrisburg, sent a request to the Philadelphia office asking for a paroling order on Moore by October 30, 1990. A paroling order (from the burglary sentence) was needed before the six months backtime on the drug conviction could be calculated by the parole board. Mario Chapel, a supervisor for the parole board in Philadelphia, wrote Mr. Ali explaining that there was no paroling paper on Moore, only a sentencing sheet listing a sentence of "time in to 23 months."
 
 
 10
 For approximately two months, nothing further happened with respect to Moore's case. On January 8 and 9, 1991, Gerald Marshall telephoned the parole board's central office in Philadelphia inquiring about Moore's parole status. On January 14, 1991, Parole Agent Dougherty went, in person, to City Hall and discussed the matter with the judge who indicated that when he used the words "time in" in his sentencing order he meant "parole immediately." Dougherty then asked the judge to amend his June 29, 1990 order by writing "parole immediately" on it. The judge complied with this request on January 14, 1991. The Philadelphia office allegedly forwarded the amended order to the Harrisburg office. On March 1, 1991, the central office called Dougherty, saying it never received the amended order. Dougherty then mailed another copy to Harrisburg.
 
 
 11
 On March 6, 1991, the Harrisburg office received the judge's amended order and concluded that Moore was paroled as of January 11, 1991, the date of the amended order. It was further concluded that Moore was now available to the parole board and that he had already served 11 months and 28 days backtime, from June 29, 1989 through June 27, 1990. Upon this discovery, Moore was paroled immediately. Moore was ultimately released on March 29, 1991 after drug testing and approval of his parole plan.
 
 
 12
 On January 22, 1991, Moore, while still incarcerated, filed a complaint against Hermann Tartler, Secretary of the Pennsylvania Board of Probation & Parole, and Parole Board Agents Lawrence Dougherty and Gerald Marshall alleging that they violated his eighth amendment right to be free from cruel and unusual punishment.[4] Moore requested civil rights damages under 42 U.S.C. § 1983. Moore alleged that Tartler, Dougherty and Marshall, acting in their official capacities, caused Moore to suffer at least three months of unjustified imprisonment as a result of their deliberate indifference to Moore's requests that they investigate the parole board's misinterpretation of a sentencing order. The parties filed cross motions for summary judgment. On May 13, 1992, the district court granted the parole board official's Motion for Summary Judgment and dismissed Moore's complaint with prejudice. Moore appeals to us, asserting that the investigation by the parole board's officers was so inept that it rose to the level of deliberate indifference.
 
 II.
 
 13
 Our review of the district court's grant of summary judgment in the parole board officials' favor is plenary. American Lumber Corp. v. National Railroad Passenger Corp., 886 F.2d 50, 52 (3d Cir.1989). Our standard of review with respect to a district court's dismissal of a complaint is, likewise, plenary. Young v. Quinlan, 960 F.2d 351 (3d Cir.1992). In reviewing a district court's grant of summary judgment, we are required to apply the same test the district court should have utilized initially. Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir.1990). Viewing the evidence in the light most favorable to Moore, we must determine whether the parole board officials, Tartler, Dougherty and Marshall, as the moving parties, have met their burden of showing there is no genuine issue of material fact for trial and that they are entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We turn now to Moore's assertion that parole board officials, Tartler, Dougherty and Marshall violated Moore's eighth amendment right to be free from cruel and unusual punishment because of their ineptitude.
 
 III.
 
 14
 To establish a claim under 42 U.S.C. § 1983, Moore must demonstrate a violation of a right secured by the Constitution and the laws of the United States. In addition, he must show that the alleged deprivation was committed by a person acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). Tartler, Dougherty and Marshall do not contest that their actions occurred under color of state law. They dispute, however, that they caused Moore to be deprived of any federally secured right.
 
 
 15
 Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and usual punishment. While cases of this sort are extremely rare, we did find that an eighth amendment violation occurred when an inmate was imprisoned nine months and eight days after the expiration of his sentence. Sample v. Diecks, 885 F.2d 1099 (3d Cir.1989). In Sample, we held that to establish § 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements. First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a casual connection between the official's response to the problem and the unjustified detention. Sample, 885 F.2d at 1110.
 
 
 16
 Among the circumstances relevant to a determination of whether the requisite attitude (deliberate indifference) is present are the scope of the official's duties and the role the official played in the everyday life of the prison. 885 F.2d at 1110. We found, "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Id.
 
 
 17
 The district court applied the Sample criteria to the facts in this case and held that Moore's claim faltered on the second criterion. The district court concluded that the "evidence thus far adduced did not cite any action that Defendants took or failed to take that 'indicates' that their response was a product of deliberate indifference."[5]
 
 
 18
 Recently, the Supreme Court reiterated that § 1983 permits recovery only when the defendant acts intentionally or with a state of mind described as deliberate indifference to deprivation of the victim's constitutional rights. Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). See also Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985) (eighth amendment violation requires a finding of actual intent or reckless disregard defined as highly unreasonable conduct or a gross departure from ordinary care); Haygood v. Younger, 769 F.2d 1350 (9th Cir.1985) (a violation of the eighth amendment requires a finding of culpable mental state on the part of prison officials, mere negligent conduct will not suffice).
 
 
 19
 Deliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation. Alexander v. Perrill, 916 F.2d 1392, 1398 (9th Cir.1990); Haygood v. Younger, supra. In Haygood the prisoner was incarcerated almost five years beyond his lawful term as a result of prison officials' failure to investigate. Because prison officials failed to address Haygood's credible evidence that he was entitled to release, the Court of Appeals for the Ninth Circuit concluded that the prison officials were deliberately indifferent to Haygood's constitutional rights. Similarly, in Alexander v. Perrill, a prisoner presented credible evidence that prison officials, after being put on notice, simply refused to investigate a computational error. There prison officials "st[ood] idly by after an inmate raised the proposition that he was being unlawfully incarcerated and had provided documentary evidence in support of his claim." But see Lundblade v. Franzen, 631 F.Supp. 214 (N.D.Ill.1986) (where an investigation was conducted, an eighth amendment claim was not supported).[6]
 
 
 20
 In Moore's case, the district court concluded--in contrast to these cases, that parole board officials did not stand "idly by" after Moore raised his concerns about the parole board's interpretation of the disputed sentencing order but instead responded to Moore's complaints by "beginning an inquiry that culminated in Judge O'Keefe's clarifying his sentencing in writing." Citing the Lundblade decision, the district court held that even if the parole board's ultimate interpretation of the meaning of the judge's words was in error, this alone did not indicate the culpability for an eighth amendment violation.
 
 
 21
 The district court observed that "an investigation, however slow and incompetent was conducted by Tartler's subordinates, pursuant to standard parole board operating procedures." Significant was the fact that the parole board did not reject Moore's initial complaint outright, or suspend its search once it was begun. Based on these undisputed facts, the district court concluded that there was no evidence that the defendants' acts constituted deliberate indifference and refused to infer deliberate indifference from the fact that it took parole board officials approximately five months to investigate Moore's claim.
 
 
 22
 We recognize that Moore's complaint raises extremely serious concerns. We do not condone the fact that it took parole board officials approximately five months to investigate Moore's claim and ultimately release him. We believe, however, that the undisputed facts show that the parole board officials were attempting to resolve the confusion over the sentencing order and were taking affirmative steps during the five months toward that end. We cannot say that this investigation was so inept or ineffectual that deliberate indifference of the part of the parole board officials may be inferred from the evidence here.[7]
 
 IV.
 
 23
 For the foregoing reasons, we will affirm the decision of the district court.
 
 
 
 *
 Honorable Joseph H. Rodriguez of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 On June 30, 1989, Moore received "Certificate of Bail and Discharge" No. 215178 indicating that bail conditions had been met and that Moore was discharged from the court's jurisdiction. He also received a memorandum from the Pretrial Services Division regarding State Parole Detainers stating, "You will now be returned to the state institution to serve the remainder of your state sentence."
 
 
 [2]
 The Clerk's order accompanying the Judge's decision provided, "Discharge the above named defendant from your custody, if detained for no other cause than the above stated." (App. 143). Moore received, the next day, a Department of Corrections Form DC-23B "Sentence Status Change Report" prepared by Graterford's Records Officer Stephen J. Tidey, which interpreted the judge's sentencing order as providing for immediate release. The parole board submitted that it is not bound, however, by the Department of Corrections's interpretation of a court order (Br. of Appellees p.7 n.2)
 
 
 [3]
 On November 21, 1990, Moore filed an Official Inmate Grievance at Graterford. He also sent Tartler a supplement to his initial appeal entitled "Judicial Due Process Notification--Malicious Delay in Appropriate Response to Request for Administrative Relief."
 
 
 [4]
 In his first claim in this complaint, Moore alleged that Hermann Tartler, John P. Showronski, Mario Chapel, Lawrence Dougherty, Gerald Marshall and Donald Vaughn deprived him of his constitutional rights by unlawfully detaining him beyond the expiration of his sentence. In his second claim, Moore asserted that Edward Burke, culinary manager at Graterford, and Dr. Gandy, a physician, subjected him to cruel and unusual punishment by serving him contaminated food and failing to provide adequate medical care for his subsequent food poisoning. In addition, Moore also alleged that prison conditions at Graterford violated the eighth amendment. All of the named defendants moved to dismiss Moore's complaint for failure to state a claim under 42 U.S.C. § 1983. On July 8, 1991, the district court granted the motion to dismiss Moore's claims against Chapel, Showronski, Vaughn and Burke. However, the district court allowed Moore to be proceed against Tartler, Dougherty and Marshall
 
 
 [5]
 Tartler, Dougherty and Marshall assert that Sample v. Diecks is inapplicable to Moore's case. They contend that Moore's confinement at Graterford until March 29, 1991, was not beyond his maximum sentence and thus was not in violation of the eighth amendment. A sentencing judge is required to establish minimum and maximum sentencing dates under 42 Pa.Cons.Stat.Ann. §§ 9756(a) and (b). The parole board officials contend that had Moore been incarcerated beyond his maximum sentence date, then he would have had a right to release. Before that maximum time occurs, any parole is by "the grace of the parole board" and can occur at any time between his minimum and maximum sentence. We disagree
 The eighth amendment analysis "is not whether or not an inmate has served beyond his maximum date, but whether there is incarceration without penological justification." Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). We find that, when the judge clarified his sentencing order to indicate he meant immediate release, Moore was entitled to immediate release. We cannot disregard the intention of the sentencing judge that Moore serve no additional period of incarceration and that Moore be immediately released simply because Moore's maximum sentence date had not expired.
 
 
 [6]
 In that case, the state investigated the prisoner's claim of sentence miscalculation and informed him that it disagreed with his interpretation of the relevant statute. Even though the state's position was ultimately shown to be mistaken, the court held that this fact alone did not indicate the culpability necessary for an eighth amendment violation. Lundblade, 631 F.Supp. at 219
 
 
 [7]
 Because of our results, we do not to reach the issue of whether the parole board officials are entitled to qualified immunity