FILED
United States Court of Appeals
Tenth Circuit

September 5, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM JOSEPH JOHNSON,

Petitioner-Appellant,

v.

ROBERT PATTON,[*]

Respondent-Appellee.

No. 13-6190
(D.C. No. 5:11-CV-00178-D)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **MATHESON**, **EBEL**, and **PHILLIPS**, Circuit Judges.

William Joseph Johnson appeals from the district court's dismissal of his

application for habeas relief under 28 U.S.C. § 2241 challenging the Oklahoma

Department of Corrections' (ODOC) execution of his 1984 Oklahoma sentence for

robbery with firearms. The governor revoked Mr. Johnson's parole twice. The

_____

[*] In accordance with Fed. R. App. P. 43(c)(2), Robert Patton is substituted for Justin Jones as the respondent-appellee in this action.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

second revocation ordered Mr. Johnson to serve the entire remainder of his sentence. He alleges (1) Oklahoma granted him a constructive pardon and thus relinquished jurisdiction over him upon his second parole by releasing him to a consecutive sentence in Washington state; (2) ODOC failed to apply "jail-time credits" (credits for time in pre-trial detention) to his sentence after the second parole revocation; and (3) ODOC failed to apply "street-time credits" (credits for time he had spent on parole) that the governor awarded him in the first parole revocation. The district court denied relief. This court granted a certificate of appealability. We exercise jurisdiction under 28 U.S.C. § 2253.

When the district court denied Mr. Johnson's three claims for habeas relief under § 2241, it concluded each of them concerned only questions of state law. But that is only partially correct.

The district court properly dismissed Mr. Johnson's constructive pardon and lack of jurisdiction argument because it was based solely on state law and therefore not a proper ground for federal habeas relief. Mr. Johnson also argued in his pro se brief to the district court that when Oklahoma granted him his second parole, returned him to Washington state to serve his tolled sentence there, and later revoked his parole and required him to serve his remaining Oklahoma sentence, the state violated his federal constitutional protections against cruel and unusual punishment and double jeopardy. These alleged violations, if established, are appropriate for federal habeas relief. But Mr. Johnson has failed to present a nonfrivolous basis to

- 2 -

establish them. We therefore affirm the district court's dismissal of Mr. Johnson's first claim.

The district court erred in dismissing Mr. Johnson's second and third claims regarding the jail-time and street-time credits on the ground that they concerned only questions of state law. This is so because Mr. Johnson alleged a federal due process violation as to each of those claims. Although their resolution rests on whether Mr. Johnson has a liberty interest under state law, that does not relieve the district court of considering this state law issue as a necessary step in the federal due process analysis. As further explained below, we therefore remand to the district court to address Mr. Johnson's federal due process claims regarding jail-time and street-time credits.

## I. BACKGROUND

Beginning on December 9, 1981, Mr. Johnson was detained pending trial on a charge of robbery with firearms in case no. CF-1981-166 in Cherokee County, Oklahoma. In March 1982, he escaped. He was captured four days later in Tulsa County, Oklahoma. Rather than being returned to Cherokee County, he was held in jail in Tulsa County pending trial on the Cherokee County charge and additional robbery-with-firearms charges in two 1982 Tulsa County cases.

Mr. Johnson pleaded guilty in both Tulsa County cases in 1983 and was sentenced to two twenty-year terms of imprisonment, to be served concurrently to each other and to any sentence in the Cherokee County case. The Tulsa County

- 3 -

judgments contained standard language that "[t]he term of sentence [was] to begin at and from the delivery of the defendant to [ODOC] at the Oklahoma State Penitentiary at McAlester, Oklahoma," but they were modified to grant him credit for time in jail since December 9, 1981. R. Vol. 1 at 436-37, 438-39. He was received into ODOC custody on the Tulsa County convictions on July 22, 1983.

A jury then convicted Mr. Johnson in the Cherokee County case, and in 1984 he was sentenced to thirty-seven years of imprisonment for that conviction. The standard text of the Cherokee County amended judgment stated, "said term and sentence [was] to begin at and from the delivery of the defendant to the Warder of the State Penitentiary at Lexington, Oklahoma," *id.* at 45, but the judgment said nothing regarding jail-time credits.[1] Mr. Johnson was received into ODOC custody on the Cherokee County conviction on June 18, 1984.

On April 10, 1992, Mr. Johnson was granted parole. He successfully served that parole for almost ten years. In March 2002, however, he was convicted of certain offenses in Washington state, where he was then residing, and on April 3, 2002, Oklahoma issued a parole violator warrant. After serving the imprisonment

---

[1] The Cherokee County amended judgment in the appellate record is a one-page document that is not signed by a judge or any court official. In contrast, the Tulsa County judgments are each two pages, with court officials' signatures at the bottom of the first page and a judge's signature, notary block, and sheriff's return on the second page (which apparently is the reverse side of the original judgment). The provision awarding jail-time credits is on the second page of the Tulsa County judgments. No one has suggested that the record copy of the Cherokee County amended judgment is incomplete.

portion of his Washington sentences, he was returned to Oklahoma's custody. On December 10, 2002, Oklahoma's governor "order[ed] that he be incarcerated to serve one year of the remaining portion of his term, with credit for street time." *Id.* at 60. The governor's order did not specify whether the grant of street-time credits was for the full ten years Mr. Johnson had been on parole or only for the time needed to cover the one year he was ordered to serve. ODOC applied a combination of time served and street time to the revocation and again released Mr. Johnson on parole on February 14, 2003.

Mr. Johnson immediately returned to Washington state to serve the supervision portion of his Washington sentences while he remained on parole for the Cherokee County conviction. In 2006, however, Mr. Johnson committed a new criminal offense, this time federal. He was sentenced to a term of imprisonment and then was released back into Oklahoma's custody on a detainer in August 2008. In August 2009, the governor again revoked Mr. Johnson's parole, ordering him to serve the entire remaining portion of his Cherokee County sentence[2] concurrently with the federal sentence, "with no credit for street time." *Id.* at 83.

ODOC had lost Mr. Johnson's file, so it had to re-calculate his sentence. In taking account of the 2002 revocation and its award of street-time credits, ODOC applied street time only to the one-year parole revocation term, not the overall

---

[2] According to the record, by this time the Cherokee County sentence was the only unsatisfied Oklahoma sentence.

thirty-seven-year sentence. Accordingly, under ODOC's calculations, Mr. Johnson lost most of the street time he accrued from 1992 to 2002. It is unclear from the record whether ODOC's calculation applied any jail-time credits.

Proceeding pro se, Mr. Johnson filed for post-conviction relief in the state courts. Both the state trial court and the Oklahoma Court of Criminal Appeals (OCCA) denied his application. He then filed a pro se application for a writ of habeas corpus under 28 U.S.C. § 2254. He alleged that by releasing him on parole in 2003 and allowing him to return to Washington to serve his consecutive term of supervision, Oklahoma had constructively pardoned him, thereby relinquishing jurisdiction over him and losing the ability to revoke his parole in 2009. He also alleged that ODOC had deprived him of due process liberty interests when it improperly calculated his sentence and denied him jail-time and street-time credits.

The district court construed the habeas application as falling under 28 U.S.C. § 2241. The magistrate judge appointed counsel for Mr. Johnson and held an evidentiary hearing regarding the jail-time and street-time credits. After the hearing, Mr. Johnson sought to proceed pro se, but the magistrate judge denied his motion. The magistrate judge then concluded in a report and recommendation that Mr. Johnson's claims rested on questions of state law, and therefore they were not cognizable in federal habeas. Counsel and Mr. Johnson both filed objections. Mr. Johnson also renewed his motion to proceed pro se. Employing de novo review, the district court agreed with the magistrate judge and denied relief on the ground

- 6 -

that Mr. Johnson's claims rested on questions of state law that were not grounds for federal habeas relief. In the same order, the district court also denied the renewed motion to proceed pro se.

Mr. Johnson appealed. This court granted a certificate of appealability and continued counsel's appointment to represent Mr. Johnson on appeal. Mr. Johnson has submitted a pro se brief supplementing his counsel's filings.

## II. **ANALYSIS**

A challenge to the execution of a sentence is properly brought under § 2241. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997); *United States v. Furman*, 112 F.3d 435, 438 (10th Cir. 1997). Our review of a § 2241 dismissal is de novo; the deference provisions of 28 U.S.C. § 2254(d) are not applicable. *See Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007).

Under § 2241(c)(3), "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." Thus, "[f]ederal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2010) (per curiam) (involving similar provision of § 2254(a)). But a state prisoner's confinement in violation of the Fourteenth Amendment's protection of procedural due process is a violation of federal law. *See Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).

A. *Loss of Jurisdiction*

We first address Mr. Johnson's claim that, by granting him parole the second time in 2003 and returning him to a tolled consecutive sentence in Washington state, Oklahoma gave him a constructive pardon and lost jurisdiction to revoke his parole in 2009 and re-imprison him. The OCCA rejected this claim, holding that Mr. Johnson failed to establish that the 2003 parole was a pardon. The OCCA distinguished this case from one of Mr. Johnson's primary authorities, *Ex parte Guy*, 269 P. 782, 784-85 (Okla. Crim. App. 1928), which held the governor had pardoned a prisoner by ordering him released from state prison before completion of his sentence for delivery to federal authorities for a federal trial.

The district court correctly held that this is a state-law issue and cannot be a basis for federal habeas relief. Even if the OCCA erred and *Ex parte Guy* should control, a state-law error is not a basis for federal habeas relief. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (per curiam); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Mr. Johnson's counseled brief relies on *Shields v. Beto*, 370 F.2d 1003, 1004-06 (5th Cir. 1967), in which the Fifth Circuit held there was a due-process violation when a state released a prisoner to a prosecution in another state and then ignored him for some twenty-eight years before attempting to require him to finish serving his sentence. Mr. Johnson's case is not factually similar to *Shields*, which the

Fifth Circuit limited in *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) (per curiam).

Mr. Johnson's pro se supplemental brief asserts the issue must be federal because it concerns crossing state boundaries, and Oklahoma's 2009 re-assertion of jurisdiction over him violates constitutional protections against cruel and unusual punishment and double jeopardy. We disagree. That Mr. Johnson returned to Washington from Oklahoma does not make an issue that otherwise rests on state law suitable for federal habeas. And the remaining constitutional arguments are based on assuming Mr. Johnson is in prison even though Oklahoma relinquished jurisdiction over him and terminated his sentence, which has not been established.

## B. *Jail-Time Credits*

The next issue is Mr. Johnson's contention that ODOC has unconstitutionally deprived him of jail-time credits. We disagree with the district court's conclusion that this issue is purely one of state law because Mr. Johnson alleges a federal due process deprivation of a liberty interest in jail-time credits.[3] Accordingly, we vacate the denial of relief and remand for further consideration of this issue.

---

[3] The magistrate judge and the district court relied on inapposite authority. The magistrate judge recommended denying relief because "[m]atters relating to sentencing and service of a sentence generally do not raise issues of federal constitutional concern unless the sentence imposed is wholly unauthorized or exceeds the statutory limits." R. Vol. 1 at 840 (citing *Johnson v. Oklahoma*, 382 F. App'x 755, 756 (10th Cir. 2010) (different Johnson than the petitioner here)). But in *Johnson*, the petitioner claimed that the state court should have awarded him jail-time credits but did not, *see* 382 F. App'x at 755, and such a claim does not generally state

(continued)

- 9 -

The "standard analysis" under the Due Process Clause "proceeds in two steps. We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout*, 131 S. Ct. at 861.

"[W]hatever liberty interest exists is, of course, a *state* interest created by [state] law." *Id.* at 862. "When, however, a State creates a liberty interest, the Due Process Clause requires fair procedure for its vindication—and federal courts will review the application of those constitutionally required procedures." *Id.*

A liberty interest can either "inhere in the Due Process clause or it may be created by state law." *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005)

---

a due process violation, *see Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988). In contrast, in this case Johnson claims not that he *should have been* awarded credits, but that he *actually was* awarded them under Oklahoma law, and ODOC refuses to apply them.

The district court denied relief because "whether jail time or other available credits are properly allocated is a matter of state law." R. Vol. 1 at 909 (citing *Litteral v. Marshall*, 437 F. App'x 749, 751 (10th Cir. 2011), and *Newell v. Page*, 280 F. Supp. 203, 204-05 (N.D. Okla. 1968)). Both *Litteral* and *Newell*, however, involved situations in which prisoners sought to apply credits in ways contrary to state law. *See Litteral*, 437 F. App'x at 751 (even though prisoner had earned good-time credits, the New Mexico Supreme Court had held that inmates serving life sentences could not apply good-time credits to serve fewer than thirty years); *Newell*, 280 F. Supp. at 204-05 (in a case pre-dating the enactment of the applicable provisions of Okla. Stat. Ann. tit. 57, § 138, holding prisoner could not receive jail-time credits where Oklahoma judges lacked any authority to grant jail-time credits). In contrast, Johnson purportedly seeks to apply credits *in conformance with* rights created by state law. *Cf. Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980) (holding that Oklahoma violated due process guarantees by depriving defendant of undisputed state statutory right to have his punishment determined by a jury).

- 10 -

(ellipses and internal quotation marks omitted).  The liberty interest alleged here does not arise from the Due Process Clause itself:  "The Constitution does not itself afford appellant a liberty interest in a reduced sentence.  A convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence."  *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998).  Oklahoma law, however, provides for jail-time credits.  *See* Okla. Stat. Ann. tit. 57, § 138(G).  To the extent Mr. Johnson is entitled to such credits because they actually were awarded or apply by operation of law, he would have a liberty interest created by Oklahoma law.  *See Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1214 (10th Cir. 2009) ("[A] federal liberty interest in parole only arises when a prisoner has a legitimate claim of entitlement to it.").

Mr. Johnson's claim that the ODOC deprived him of earned jail-time credits is analogous to a claim of depriving a prisoner of earned good-time credits, and courts recognize that a prisoner has a liberty interest in such credits.  *See Howard v. U.S. Bur. of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007); *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996); *Waldon v. Evans*, 861 P.2d 311, 313 (Okla. Crim. App. 1993).  Further, in *Sandin v. Conner*, 515 U.S. 472 (1995), in which the Supreme Court generally limited prisoners' liberty interests to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, the Court also recognized a liberty interest "where the State's action will inevitably affect the duration of [the prisoner's]

- 11 -

sentence," *id.* at 487.  Failure to apply awarded jail-time credits would affect the duration of Mr. Johnson's sentence.  *See Brown v. Perrill*, 21 F.3d 1008, 1010 (10th Cir. 1994) (stating that prisoner stated "a viable claim of a due process violation" where federal court awarded jail-time credits, but prison administration deducted them), *supp. on reh'g*, 28 F.3d 1073, 1075-76 (10th Cir. 1994); *see also Wilson*, 430 F.3d at 1120 (stating that petitioner's "misconduct conviction infringed a liberty interest because it reduced his credit earning class in a manner that inevitably affected the duration of his sentence" (brackets and internal quotation marks omitted)).

No court has determined whether Mr. Johnson is entitled to the application of jail-time credits on the Cherokee County sentence.  Okla. Stat. Ann. tit. 57, § 138(G) appears to require an award of jail-time credits:  "The length of any jail term served by an inmate before being transported to a state correctional institution pursuant to a judgment and sentence of incarceration shall be deducted from the term of imprisonment at the state correctional institution."[4]  The OCCA stated "it is a matter of well settled law that the sentencing judge in Oklahoma has discretion in deciding whether to allow a defendant credit for time served in jail before sentencing," *Holloway v. State*, 182 P.3d 845, 847 (Okla. Crim. App. 2008), but it also stated the defendant "will automatically receive credit for time served prior to trial pursuant to" § 138, *Loyd v. State*, 624 P.2d 74, 75 (Okla. Crim. App. 1981).

[4] The relevant language previously was in Okla. Stat. Ann. tit. 57, § 138(C).

- 12 -

Mr. Johnson's Cherokee County amended judgment in the record contains standard language regarding the start of the sentence, but it does not address jail-time credit. *See* R. Vol. 1 at 45. The Tulsa County judgments said the Tulsa County sentences would be served concurrently with the Cherokee County sentence and that Mr. Johnson would receive credit for time served since December 9, 1981. *Id.* at 208, 210. Jim Rabon, ODOC's Administrator of Sentence Administration, testified at the evidentiary hearing before the magistrate judge that it is ODOC's policy to apply jail-time credit if the sentencing judge does not deny it. *Id.* Vol. 2 at 64.

If the state trial court did not deny jail-time credits and the ODOC's policy controls, nothing in the record indicates Mr. Johnson is not entitled to them. The record also is unclear about how much jail-time credit would be applicable and whether ODOC already has applied credits to the Cherokee County sentence. At the evidentiary hearing, Mr. Johnson testified that he has never received a satisfactory answer about jail-time credits. *Id.* at 46. ODOC told him that it was making inquiries with Cherokee County, *id.* Vol. 1 at 92, and it appears the Cherokee County trial court requested a statement of jail time, *id.* at 896. But the county's response was "[w]e have no record of this inmate" because the jail had lost its records in a fire. *Id.* at 896-97.[5] Mr. Rabon could not testify that any jail time due to Mr. Johnson actually had been credited to the Cherokee County sentence, *id.* Vol. 2 at 92; he said

_____

[5] There is no indication that any inquiries were made of Tulsa County, where it appears Mr. Johnson was held after he escaped from jail in Cherokee County.

there was no reason to believe jail time had not been applied appropriately, *id.* at 65. Further, the affidavit of Kevin Moore, an employee in the ODOC Sentence Administration Unit, does not mention jail time in recounting Mr. Johnson's imprisonment history. *Id.* Vol. 1 at 588; *see also id.* at 90 (e-mail from Mr. Moore regarding time Mr. Johnson served).

We vacate the denial of relief on this claim and remand for the district court to determine as part of addressing Mr. Johnson's due process deprivation claim whether he is entitled to have jail-time credits applied to his Cherokee County sentence and therefore has a liberty interest. If he has a liberty interest, the district court must address whether it was deprived through constitutionally sufficient procedure.

## C. *Street-Time Credits*

The final issue is Mr. Johnson's contention that ODOC unconstitutionally deprived him of street-time credits the governor awarded in 2002. Because prisoners have a due process liberty interest in ODOC applying street-time credits to which they are entitled, we again disagree with the district court that this is purely a state law issue. And because no court has yet addressed whether Mr. Johnson is entitled to have the full period of street time (nearly ten years) applied to his thirty-seven-year sentence, we vacate the denial of relief and remand for further proceedings.

The Due Process Clause itself does not require that a prisoner receive credit for time spent on parole, so again the question is whether Mr. Johnson has a liberty interest under Oklahoma law. Although the governor has discretion to award

- 14 -

street-time credits when revoking parole, *see* Okla. Stat. Ann. tit. 57, § 350(A), in this case the governor actually awarded such credits as part of the 2002 parole revocation.

Street-time credits arise from Okla. Stat. Ann. tit. 57, § 350(A), which provides:

> Every person, hereinafter referred to as "convict", who has been or who in the future may be sentenced to imprisonment in any state penal institution shall, in addition to any other deductions provided for by law, be entitled to a deduction from his sentence for all time during which he has been or may be on parole. The provisions of this section are hereby declared to be both retroactive and prospective, and to apply to convicts who are on parole on the effective date of this act as well as to convicts who may be paroled thereafter; and shall at the discretion of the paroling authority apply to time on a parole which has been or shall be revoked.

(footnote omitted). Mr. Johnson complains that ODOC has misinterpreted § 350(A). He contends that under § 350(A), once the governor awarded him street-time credits in 2002, ODOC was required to deduct nearly ten years from his thirty-seven-year Cherokee County sentence. In contrast, ODOC interprets § 350(A) to apply only to whatever sentence of imprisonment is imposed when revoking parole, rather than the original sentence. Thus, ODOC applied street-time credits to shorten Mr. Johnson's one-year parole revocation sentence, not the thirty-seven-year sentence. Under ODOC's interpretation, the remaining years of street time had no effect on the thirty-seven-year sentence.

No court has analyzed the validity of Mr. Johnson's or ODOC's arguments. Although Mr. Johnson presented his street-time claim to the Oklahoma courts in his

- 15 -

post-conviction proceeding, the OCCA's decision focused exclusively on his constructive-pardon/loss-of-jurisdiction claim.[6] Mr. Johnson deserves to have a court determine whether he has a liberty interest, and, if so, whether ODOC has unconstitutionally deprived him of that interest.

Accordingly, we vacate the denial of relief on the street-time claim and remand for further proceedings. The district court should determine whether Mr. Johnson has a due process liberty interest based on an entitlement to have the full amount of his 2002 street-time credits applied to his thirty-seven-year sentence. If he has a liberty interest, the district court must address whether it has been deprived through constitutionally sufficient procedure.[7]

---

[6] In the context of § 2254(d), this decision would be presumed to be a decision on the merits, deserving of deferential review. *See Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). But this is a § 2241 action, in which the standard of review does not depend on determining whether the state court decided a claim on the merits. *See Walck*, 472 F.3d at 1235. Of course, the federal habeas courts must accept the OCCA's interpretation of Oklahoma law, *see Heard v. Addison*, 728 F.3d 1170, 1175 (10th Cir. 2013) (§ 2254 case), even interpretations that may be erroneous, *see Swarthout*, 131 S. Ct. at 861; *Pulley*, 465 U.S. at 41. But we have located no cases interpreting the current version of § 350(A). Given the lack of guidance, the district court may consider certifying the question to the OCCA. *See Burleson v. Saffle*, 278 F.3d 1136, 1144-45 (10th Cir. 2002).

[7] Once the district court has addressed the due process issue—liberty interest under state law, deprivation, sufficiency of process—"[t]hat should [be] . . . the end of the federal habeas court['s] inquiry." *Swarthout*, 131 S. Ct. at 862. "Because the only federal right at issue is procedural, the relevant inquiry is what process [Mr. Johnson] received, not whether the state court decided the case correctly." *Id.* at 863.

## III. CONCLUSION

The clerk is directed to file Mr. Johnson's pro se supplemental brief as of the date it was received. The judgment of the district court is affirmed as to the relinquishment-of-jurisdiction claim, but it is vacated and remanded for further proceedings as to the jail-time and street-time claims.[8]

ENTERED FOR THE COURT,


David M. Ebel
Circuit Judge

---

[8] Invoking the Sixth Amendment, Mr. Johnson's supplemental brief complains the district court denied his motions to proceed pro se. But petitioners generally have no Sixth Amendment right to counsel in habeas proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 821 n.29 (10th Cir. 1995), and therefore no Sixth Amendment right *not* to have counsel in civil cases. Accordingly, the district court committed no constitutional violation.

But Mr. Johnson does have a federal statutory right to proceed pro se in this action. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). Because we vacate the denial of relief regarding the application of jail-time and street-time credits and remand for further proceedings, the district court should consider any renewed request by Mr. Johnson to proceed pro se in light of § 1654. Counsel may be necessary, however, if the district court holds evidentiary hearings. *Cf.* Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").