**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN STEPHEN ROUTT,

    Plaintiff - Appellant,

v.

ANDY HOWRY; BRIAN
THORNBOUGH,

    Defendants - Appellees.

No. 19-6187
(D.C. No. 5:18-CV-00127-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

John Stephen Routt, an Oklahoma state prisoner proceeding pro se, appeals the

district court's dismissal of a civil rights action he brought under 42 U.S.C. § 1983.

The sole issue on appeal is whether the district court erred in granting defendants'

motion to dismiss Routt's individual-capacity claim on the ground of qualified

immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the district

court did not err. We therefore affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. Background

In March 2015, while Routt was serving state prison sentences on two convictions, he pled nolo contendere to another state charge. In its initial Judgment and Sentence (Initial Judgment), the state trial court sentenced Routt to four years in prison to run concurrently with his existing sentences and "with credit for time served." R. at 58 (boldface and capitalization omitted). The Initial Judgment did not specify how much time to credit.[1]

In September 2015, Routt noticed that he was not receiving credit for time served. He brought this to the attention of his case manager and the two defendants here, prison-records officer Andy Howry and administrator Brian Thornbough. Between late September and the first week of December 2015, Routt met with both Howry and Thornbough on several occasions, filed a request to staff with Howry, and filed a grievance that Thornbough denied. Through those efforts, Routt explained that per his plea agreement, the "time served" he was to receive credit for was April 13, 2014 to April 2, 2015, and he asked defendants to apply that time toward his sentence. Defendants declined to apply any time served. Howry allegedly stated "if the court intended to give you that amount of time, then it would be put in the [Initial] Judgment." R. at 246 (internal quotation marks omitted). On a later occasion, Thornbough allegedly told Routt that "[i]f the court intended for you to have the days you stated, it would have been in the [Initial] Judgment." R. at 247

---

[1] Although unstated in Routt's operative amended complaint, it is undisputed that "time served" refers to jail time prior to sentencing on his 2015 conviction.

(internal quotation marks omitted). Howry allegedly told Routt that although Howry "could make a phone call," Howry "would not do it." R. at 248.

On January 8, 2016, Routt filed a Motion for Specific Performance in the sentencing court and asked his public defender to represent the motion. On March 17, 2016, Routt received a sentencing-court order to amend the Initial Judgment (Order to Amend). The Order to Amend, which was dated March 15, 2016, stated that Routt "was entitled to credit for time served from April 13, 2014 through April 2, 2015," R. at 149, which was just as he had claimed. Routt gave the Order to Amend to Thornbough's assistant. The sentencing court also issued an amended Judgment and Sentence (Amended Judgment). The date in the signature block on the Amended Judgment is March 15, 2016, but the file stamp, which is difficult to read, is dated either March 23 or March 28, 2016. *Compare* R. at 151, *with* R. at 153.

On March 27, 2016, Routt explained to another prison official that he should have already been discharged, and he showed the official a copy of the grievance he had filed. On March 28, 2016, Routt was discharged.

Routt then filed the complaint in this action. The district court ordered a *Martinez* report.[2] After the report was completed, Routt filed an amended complaint

---

[2] *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (per curiam) (recommending preparation by state prison officials of investigative report to present to federal court in § 1983 suit brought by prisoner). The Initial Judgment, Order to Amend, and Amended Judgment were attached to a *Martinez* report. Generally, a court may not use a *Martinez* report to determine whether a plaintiff has stated a claim to relief under Federal Rule of Civil Procedure 12(b)(6), which is the

3

alleging that defendants Howry and Thornbough violated his Eighth and Fourteenth Amendment rights by refusing to credit him for time served, which resulted in Routt being imprisoned for 53 days past his discharge date. He named each defendant in their official and individual capacities, and he sought compensatory damages, punitive damages, and costs.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment. In relevant part, they argued that Eleventh Amendment immunity barred the official-capacity claim and that they were entitled to qualified immunity on the individual-capacity claim. A magistrate judge issued a report recommending that the district court dismiss the official-capacity claim but treat the qualified-immunity claim as requiring disposition on summary judgment and denying the motion with leave to refile after discovery. Defendants filed objections to the recommendation. Routt responded to those objections but filed none of his own. The district court agreed with the magistrate

---

procedural posture of this case. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). Nevertheless, we may consider the Initial Judgment, the Order to Amend, and the Amended Judgment because we do not rely on them to refute any facts Routt alleged or to resolve any factual disputes. *See Hall v. Bellmon*, 935 F.2d 1106, 1112-13 (10th Cir. 1991) (permitting use at Rule 12(b)(6) stage of "portions of [a] *Martinez* report" that were "not use[d] . . . to resolve factual issues or to find that there are no disputed facts"). Moreover, we may take judicial notice of these documents. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (explaining that federal courts may take judicial notice of state-court documents in context of Rule 12(b)(6) analysis).

4

judge's recommendation regarding the official-capacity claim and dismissed it. That ruling is not at issue in this appeal. But the district court disagreed with the recommendation as to the individual-capacity claim and dismissed that claim under Rule 12(b)(6) on the ground that defendants were entitled to qualified immunity because there was no clearly established law indicating their actions were unconstitutional. Routt appeals.

## II. Discussion

Routt raises one issue on appeal: whether the district court erred in granting defendants qualified immunity. "We review de novo the grant of a motion to dismiss under Rule 12(b)(6) due to qualified immunity." *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir.), *cert. denied sub nom. I.B. v. Woodard*, 139 S. Ct. 2616, 2616 (2019). In doing so, "we accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) (brackets and internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Doe*, 912 F.3d at 1288 (brackets and internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

5

"When a defendant raises the qualified-immunity defense, the plaintiff must . . . establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236. We confine our analysis here to the clearly-established prong because the parties focus only on that prong and we can more readily decide this case on that prong. *See id.*

Routt points to a variety of cases from the Supreme Court and the circuit courts that he says clearly establish a right that defendants' conduct violated. Construing his pro se filings liberally, but without acting as his advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we disagree.

To determine whether a right is clearly established, "[w]e look to see if existing precedent placed the statutory or constitutional question beyond debate." *Est. of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016) (ellipsis and internal quotation marks omitted). This typically "requires either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted).

"[A] right is clearly established when a precedent involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal quotation marks omitted).

6

"[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful," if it "giv[es] fair and clear warning" that the conduct violates the plaintiff's rights. *United States v. Lanier*, 520 U.S. 259, 271 (1997) (brackets and internal quotation marks omitted). For example, in *Taylor v. Riojas*, the Supreme Court recently reversed the grant of qualified immunity under the "obvious clarity" standard where a prisoner was housed in a cell "teeming with human waste for . . . six days." No. 19-1261, 2020 WL 6385693, at *1 (U.S. Nov. 2, 2020) (per curiam) (internal quotation marks omitted). But lacking a rule that applies with obvious clarity, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation and internal quotation marks omitted).

Routt relies on a number of cases standing for the general constitutional principles that a prisoner has a due-process liberty interest in credit for jail time served (or, analogously, in good-time credits) and a right under the Eighth Amendment's prohibition on cruel and unusual punishment to be released when his sentence ends. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 487 (1995) (recognizing liberty interest "where the State's action will inevitably affect the duration of [a] sentence"); *Johnson v. Patton*, 580 F. App'x 646, 651-52 (10th Cir. 2014) (liberty interest in jail-time credit); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811

7

(10th Cir. 2007) (liberty interest in good-time credits); *Brown v. Perrill*, 21 F.3d 1008, 1010 (10th Cir. 1994) (liberty interest in jail-time credit); *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (liberty interest in good-time credits); *Mitchell v. N.M. Dep't of Corr.*, No. 93-2038, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished) ("Imprisonment beyond one's term can constitute cruel and unusual punishment for purposes of the Eighth Amendment."). But none of these cases involved an alleged failure or refusal to investigate a prisoner's contention that he was not receiving proper credit for time served or other time credits, and none applies with "obvious clarity" to defendants' particular conduct.

Citing no on-point Supreme Court authority, and conceding there is no Tenth Circuit precedent directly on point, *see* Aplt. Opening Br. at 7, Routt relies on three extra-circuit cases. We begin with two that come from the Ninth Circuit—*Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (en banc), and *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990). Neither applies with obvious clarity or aids in clearly establishing that defendants' particular conduct violated Routt's rights.

*Haygood* involved confinement beyond the end of a sentence arising from prison officials' erroneous interpretation of state law concerning the sequencing of sentences, *see* 769 F.2d at 1352-53, and the failure to provide a timely hearing, *see id.* at 1358. In upholding a jury verdict in Haygood's favor on his § 1983 claims, the Ninth Circuit ruled that prison officials had a duty to investigate his claim of computational error in the calculation of his sentence and their failure to do so raised viable due process and Eighth Amendment claims. *Id.* at 1355, 1358-59. In

8

*Alexander*, the Ninth Circuit upheld the denial of qualified immunity to federal prison officials who failed to investigate a claim of over-detention based on improper credit by the Bureau of Prisons' (BOP's) Central Office for time served in a foreign jail. *See* 916 F.2d at 1393-94. The court reaffirmed its "decision in *Haygood* that prison officials who are under a duty to investigate claims of computational errors in the calculation of prison sentences may be liable for their failure to do so when a reasonable request is made." *Id.* at 1398.

Notably, neither *Haygood* nor *Alexander* involved a delay in the resolution of the prisoner's claim of over-detention not caused by the prison officials' failure to investigate. That is the case here. Routt was released on March 28, 2016, which he alleged was 53 days after his sentence should have expired if defendants had properly credited him for time served. That means Routt's sentence expired on or about February 4, 2016. But according to the allegations in his complaint, all of Routt's complaints to defendants about credit for time served were well prior to that date. Routt's first contact with defendants was in late September 2015 and his last contact with them occurred during "[t]he first week of December 2015," when Thornbough called Routt to his office and provided Routt with a response to his grievance. R. at 248. Routt then filed, on January 8, 2016, an ultimately *successful* motion with the sentencing court. That motion, too, was filed before what turned out to be the correct expiration of his sentence, but the sentencing court did not rule on it until after Routt's sentence had expired. Routt did not allege that defendants played any role in the timing of the sentencing court's processing of his motion, and Routt was released

9

once the sentencing court issued the Amended Judgment. Accordingly, we conclude that *Haygood* and *Alexander* do not apply with obvious clarity to the facts of this case or involve materially similar conduct. Therefore, they could not have provided fair notice of a potential constitutional violation in this case.

*Alexander* is inapposite for yet another reason—the Ninth Circuit considered it important that a federal regulation required the defendant warden to investigate by at least making inquiry with the BOP's Central Office. *See* 916 F.2d at 1398-99. Routt contends that defendants had a similar duty to investigate under Oklahoma Department of Corrections (ODOC) Policy OP-060211. We disagree because the policy language is too imprecise to clearly establish such a duty.[3] Under the policy, the award of pre-sentencing jail time is contingent "[u]pon receipt of proper documentation," which "means the Judgment and Sentence or other sentencing documents." R. at 66, OP-060211 § II.A.1. Where, as with the Initial Judgment here, "the Judgment and Sentence or sentencing document does not specify the amount of pre-sentencing jail time an inmate is to receive, then a statement from the sentencing county *will be used* to determine the amount of pre-sentencing jail time to be granted." *Id.*, § II.A.1. (emphasis added). The policy further provides that "[s]tatements from county jails used to determine jail time *will be received* directly

---

[3] The ODOC policy is relevant to whether defendants' actions were objectively reasonable. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1252-53 (10th Cir. 2003) (explaining that although "the presence of a statute is *not* relevant to the question of whether the law is 'clearly established,' . . . a state officer's reliance on a statute is one factor to consider in determining whether the officer's actions were objectively reasonable").

10

from the court clerk or detaining agency in the county or counties where the inmate was detained and will be signed." *Id.*, § II.A.2. (emphasis added).

Although the policy contemplates that ODOC will *receive* and *use* documentation provided by a county court clerk or detaining agency that is determinative of the amount of jail time to credit, nothing in the policy clearly imposes a duty on the part of ODOC *to act affirmatively* in obtaining the necessary information from the sentencing county. Furthermore, as just discussed, Routt clearly could have obtained the required documentation himself prior to the expiration of his sentence, either by seeking it from the sentencing court earlier or if the sentencing court had entered its Amended Judgment sooner. So this is not a case where defendants had the sole ability to obtain the required information. *Cf. Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) ("A warden . . . may have ultimate responsibility for seeing that prisoners are released when their sentences are served, [but a warden] does not exhibit deliberate indifference [required for an Eighth Amendment claim] by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter."). The policy, therefore, does not undermine the objective reasonableness of defendants' response to Routt's complaint that he was not receiving credit for time served. To the contrary, defendants' refusal to credit Routt for time served in the

11

absence of proper documentation was objectively reasonable under the plain terms of the policy.[4]

We further note that the Ninth Circuit itself has distinguished *Haygood* and *Alexander* in circumstances similar to those here. In *Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011), which defendants rely on, the issue was "whether state prison officials had a clearly established duty to seek out original court records in response to a prisoner's *unsupported* assertion that he was being overdetained in violation of the United States Constitution." *Id.* at 1096 (emphasis added). The court determined that "neither *Haygood* nor *Alexander* establishes a duty to obtain a prisoner's court file where the institutional file appears complete, the sentence was appropriately []calculated under state law, and the prisoner has presented no evidence to the contrary." *Id.* at 1099. Although Routt's circumstances are slightly different, *Alston* is sufficiently analogous to lend further support to our conclusion that it was not clearly established that defendants' particular conduct here violated Routt's constitutional rights. *See Mullenix*, 577 U.S. at 12.

---

[4] Routt claims that at the time he inquired of defendants, ODOC already possessed the documentary evidence needed to calculate how much credit for time served to award him. *See* Aplt. Opening Br. at 8-9, 14. But he does not identify that evidence. Based on his allegations, his entitlement to time served was part of his plea agreement, but he did not allege (and does not argue) that defendants had a copy of the agreement. The only other evidence establishing the amount of jail time he was to receive credit for are the Order to Amend and the Amended Judgment, neither of which ODOC received until long after Routt made his inquiries to defendants. We therefore reject his suggestion that it is impermissible to focus on whether defendants had a constitutional obligation to investigate his court records and make inquiries on his behalf. *See id.* at 8.

The third extra-circuit case Routt directs us to is *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993). In *Moore*, the Third Circuit affirmed the grant of summary judgment on an Eighth Amendment claim to parole board officials who misinterpreted the meaning of a sentence to "time in to 23 months" and, as a result, detained Moore beyond the end of his sentence. *See id.* at 683 (internal quotation marks omitted). After examining *Haygood* and *Alexander*, *id.* at 686-87, the court ruled that although a parole board investigation could have been more expeditious, the defendants did not stand "idly by" (as the *Alexander* defendants had done) after Moore raised "concerns about the parole board's interpretation of the disputed sentencing order but instead . . . [began] an inquiry that culminated in [the sentencing judge] clarifying his sentencing in writing." *Id.* at 687 (internal quotation marks omitted). Significantly, *Moore* observed that the investigation "was conducted . . . pursuant to standard parole board operating procedures." *Id.* (internal quotation marks omitted). This points up an important distinction from this case where, as we have discussed, ODOC Policy OP-060211 did not direct defendants to take any specific course of action in response to Routt's assertions concerning the amount of jail-time credits he was entitled to. We therefore cannot say that *Moore* is particularly helpful to Routt. Even if it were, we would be left with only one case from another circuit, and that is insufficient to constitute the weight of authority from other circuits that is necessary to finding it clearly established that defendants' particular conduct violated Routt's rights. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (explaining that the "weight of authority"

13

standard requires something more than "a handful of decisions from courts in other circuits" that have not been "broadly accepted").

### III. Conclusion

We agree with the district court that there was no clearly established law indicating that defendants' actions were unconstitutional and therefore defendants were entitled to dismissal of Routt's amended complaint based on qualified immunity. Consequently, we affirm the district court's judgment. We grant Routt's motion to proceed on appeal without prepayment of costs or fees and remind him of his obligation to continue making partial payments until the appellate filing and docketing fees are paid in full. *See* 28 U.S.C. § 1915(a)(1) (excusing only prepayment of appellate fees).

Entered for the Court

Carolyn B. McHugh
Circuit Judge

14